(Nos. 58093, 58098 cons.—

PAUL STACK *et al.*, Appellants, v. THE REGIONAL TRANSPORTATION AUTHORITY *et al.*, Appellees.—JOHN BURNS *et al.*, Appellants, v. THE REGIONAL TRANSPORTATION AUTHORITY *et al.*, Appellees.

*Opinion filed March 23, 1984.*

Holstein Mack & Associates; Katz, Friedman, Schur & Eagle; and Jeffrey M. Goldberg, all of Chicago, for appellants.

Jeremiah Marsh, Michael Schneiderman, Michael M. Conway, John L. Rogers III, Albert C. Maule, all of Hopkins & Sutter, of Chicago (Carl J. Frank, of counsel), for appellees Regional Transportation Authority, Illinois Central Gulf Railroad, Northeast Illinois Regional Commuter Railroad Corporation, and Norfolk & Western Railroad.

Thomas J. Knapp, Richard J. Schreiber, and Kenneth J. Wysoglad, of Chicago, for appellee Burlington Northern, Inc.

Ray G. Rezner and W. Scott Porterfield of Fishman, Merrick & Perlman, P.C., and Michael L. Closen, all of Chicago, for appellants.

Jeremiah Marsh, Michael Schneiderman, Michael M. Conway, John L. Rogers III and Albert C. Maule, all of Hopkins & Sutter, of Chicago (Carl J. Frank, of counsel), for appellee Regional Transportation Authority.

Jean M. Golden of Cassiday, Schade & Gloor, and John O. DeMaret and Ronald F. Bartkowicz, all of Chicago, for appellee Chicago Transit Authority.

JUSTICE GOLDENHERSH delivered the opinion of the court:

In Docket No. 58093, plaintiff, Paul Stack, and other named plaintiffs, filed a class action in the circuit court of Cook County alleging that defendants, the Regional Transportation Authority, its board members and five commuter rail carriers, had breached contracts entered into with each member of the plaintiff class by refusing to fully honor monthly passes purchased by plaintiffs which entitled them to ride on commuter trains operated by defendants.

In Docket No. 58098, plaintiff, John T. Burns, and other named plaintiffs, represented a class of plaintiffs who sued defendants, the Regional Transportation Authority (RTA) and the Chicago Transit Authority (CTA), for breach of contract resulting from defendants' refusal to fully honor monthly passes purchased by the plaintiffs which entitled them to ride buses operated by defendants. The circuit court of Cook County concluded that the defendants breached the contracts and in both actions granted partial summary judgment for the plaintiffs.

Members of the plaintiff class in *Stack* are individuals who, prior to a July 6, 1981, fare increase, purchased from defendants July 1981 monthly commuter-train passes. Because of the fare increase, defendants invalidated the monthly passes effective July 27, 1981, thereby requiring plaintiffs to pay additional fares for transportation for the remaining days in July. Members of the class in *Burns* are individuals who, prior to a July 6, 1981, fare increase, purchased from defendant CTA July 1981 monthly bus passes.

In *Stack* (58093), pursuant to Rule 308 (87 Ill. 2d R. 308), the circuit court certified the following question:

"Did plaintiffs as a result of their purchase of July, 1981

passes for commuter rail service on or before July 6, 1981, acquire rights which any of the defendants—the Regional Transportation Authority, its individual board members, the ICG, the Burlington, the N&W or the Northeast—breached by the refusal to honor July, 1981 monthly passes after July 26, 1981?"

A similar question was certified in *Burns* (58098):

"Did plaintiffs have a contract with the Chicago Transit Authority or the Regional Transportation Authority or both as a result of their purchase of July CTA monthly passes prior to July 6, 1981, which contract was breached by the imposition of a per ride surcharge from July 6 to July 31, 1981, following enactment of ordinances by the CTA and RTA imposing general fare increases effective July 6, 1981 ***?"

Pursuant to Rule 308, the appellate court allowed leave to appeal in both cases. In *Burns*, the appellate court reversed the judgment of the circuit court and remanded the cause with directions to enter judgment in favor of defendants. (*Burns v. Regional Transportation Authority* (1982), 112 Ill. App. 3d 464.) In *Stack v. Regional Transportation Authority* (1983), 111 Ill. App. 3d 1163, the appellate court, in a Rule 23 order (87 Ill. 2d R. 23), followed the decision in *Burns*, reversed the partial summary judgment entered in favor of plaintiffs and remanded the causes to the circuit court with directions to enter judgment in favor of defendants. We allowed plaintiffs' petitions for leave to appeal (87 Ill. 2d R. 315) and consolidated the causes for further proceedings. The relevant facts are adequately stated in the appellate court opinion and will be restated here to the extent necessary to discuss the issues.

In reversing the judgment in *Burns*, the appellate court held that there was a contractual relationship between plaintiffs and the RTA and CTA and that a monthly pass is a receipt "which reflects prepayment of the current fare and is subject to the statutory powers and obli-

gations of the carrier." (*Burns v. Regional Transportation Authority* (1982), 112 Ill. App. 3d 464, 471.) It held, however, that the contractual terms were not breached by defendants' requirement of the surcharge "because of defendants' statutory grant of authority to alter fares." (112 Ill. App. 3d 464, 471.) In *Stack*, the appellate court followed the rationale of *Burns*.

Simply stated, it is plaintiffs' contention that the appellate court erred in holding that the contracts created by the issuance of the passes were subject to an implied power on the part of defendants to modify the terms in the event of changes in the applicable fares. It is defendants' position that the RTA is empowered to set and change fares, and that its authority to adjust fares charged those who used the passes may not be restricted by purported contractual rights.

The pass issued by the defendant CTA states that it is a "monthly pass" and in prominent letters bears the word "July" and the words "Expires 8-1-81 3 P.M."

On the passes issued by the defendant rail carriers, in varying terms, it is indicated that the pass is good for the month of July 1981 or that it is "a monthly ticket," or in one instance, "good for passage of one person per ride for 60 single continuous rides on electric commuter trains during: July '81 ***." In each instance the pass bears the legend "subject to tariff regulations."

In *Chicago & Alton R.R. Co. v. Dumser* (1896), 161 Ill. 190, the court said:

> "Ordinarily a ticket is not a contract, but is a means adopted for convenience to enable the persons in charge of trains to recognize the holder as entitled to passage, and to be taken up by the conductor or ticket collector as his voucher. (*Burdick v. People*, 149 Ill. 600.) In American and English Encyclopedia of Law (vol. 25, p. 1074) the law on this subject is stated as follows: 'The settled opinion is, that a passage ticket, in the ordinary

form, is merely a voucher, token or receipt, adopted for convenience, to show that the passenger has paid his fare from one place to another, and does not constitute the contract of carriage, although it often does have upon it some condition or limitation which enters into and forms a part of the contract. Accordingly, it is admissible to prove by parol evidence the terms of the contract in fact entered into between the carrier and the passenger.' " *Chicago & Alton R.R. Co. v. Dumser* (1896), 161 Ill. 190, 194-95.

The evidence shows that defendant CTA advertised its monthly pass arrangement on television, proclaiming, "The CTA monthly pass. Unlimited rides, unlimited transfers, weekdays, weekends." Defendant CTA also distributed a pamphlet entitled, "CTA Monthly Pass," and describing the attributes of the passes:

> "Congratulations on receiving your CTA monthly pass. You now have unlimited riding privileges on the CTA for the entire month for which your pass has been issued. Correct change is unnecessary and you won't have to buy a transfer—you'll just show your Pass!"

Defendant RTA produced a pamphlet entitled "More about the RTA monthly get around tickets" which stated in pertinent part:

> "No more buying things you don't need just to get some extra quarters and dimes for exact fare. No more fumbling around for loose change. Because now you can buy a whole month of bus rides at one time. With one of seven new monthly Get Around Tickets from the RTA."

We agree with the appellate court that the defendant RTA had the power to adopt the ordinance setting new fares, both for its operations and for the commuter railroads. We disagree, however, as to the nature of the contract which was entered into by reason of the purchase and issuance of the monthly passes. Defendant RTA was empowered to authorize the sale of monthly passes, and CTA issued a form of monthly pass which it sold for a

stipulated sum, valid for a fixed period of time, without limitation on the extent of its use during that period. The commuter rail carriers issued passes which entitled the holder, within a fixed period of time, to a stated number of rides. These passes made no provision for refunds for unused rides and there is no reference to the fare applicable for individual rides.

The parties have not cited and we have not found any authorities which involve the issue here presented. The situation here is clearly distinguishable from those presented in the cases cited by defendants. (*Lust v. Metropolitan West Side Elevated Ry. Co.* (1921), 222 Ill. App. 288; *Levine v. Long Island R.R. Co.* (1972), 38 A.D.2d 936, 331 N.Y.S.2d 451.) In each of those cases the fare for a single ride had been increased and the ticket holder could use the ticket in part payment (*Lust*) or obtain a refund (*Levine*). Here, there was no such provision and defendants were no more authorized to increase the cost of the passes during their effective period than they would be to increase the fare for a single ride after the passenger had boarded the carrier.

As noted, the passes make no provision for refund in the event of cancellation and provide no basis for calculating a refund. The appellate court concluded that there "is an element of unfairness here" and that "the person who purchased his ticket before the increase is, in effect, 'stuck.' " (*Burns v. Regional Transportation Authority* (1982), 112 Ill. App. 3d 464, 475.) We do not agree. The purchaser of the pass is entitled to the agreed-upon transportation during the period stipulated and the increase in tariffs effective during the period does not serve to amend or terminate the agreement.

Because of the conclusions reached as to the nature of the contracts between the parties we do not reach the constitutional issues raised by the parties. For the reasons stated the judgments of the appellate court are reversed

and the causes are remanded to the circuit court of Cook County for further proceedings consistent with this opinion.

*Reversed and remanded.*