In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2172

IN RE:

IFC CREDIT CORPORATION,

*Debtor*.

APPEAL OF:

NORTHBROOK BANK & TRUST COMPANY.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 11 C 1976—**Blanche M. Manning**, *Judge*.

ARGUED OCTOBER 17, 2011—DECIDED DECEMBER 5, 2011

Before BAUER, POSNER, and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*.   IFC Credit Corporation voluntarily declared bankruptcy under Chapter 7 of the Bankruptcy Code on July 27, 2009. Its bankruptcy petition was signed only by its president, however, and he is not a lawyer—a slip that precipitated this appeal—though the next day the company filed an amended petition signed by a lawyer.

Prior to the filing of the bankruptcy petition, a creditor of IFC (Northbrook Bank & Trust—actually its predeces-

sor, First Chicago Bank & Trust, but we can ignore that detail) had sued IFC, charging fraud. Upon the filing of the original petition, all suits against the debtor were automatically stayed. 11 U.S.C. § 362(a)(1). So Northbrook refiled its fraud complaint as a claim in the bankruptcy proceeding. In response, IFC's trustee in bankruptcy moved to rescind payments of pre-petition debts that IFC had made to Northbrook, on the ground that the payments were voidable preferences because they had been made within 90 days before the declaration of bankruptcy. See 11 U.S.C. §§ 547(b), (f). The parties settled the trustee's preferences claim conditional on a determination that the bankruptcy court had had jurisdiction over it.

Northbrook's jurisdictional argument, rejected by the bankruptcy and district judges and now pressed on us, is that the fact that the original petition for bankruptcy was not signed by a lawyer made the bankruptcy proceeding void, or as state court cases say (though the question whether a person or firm or other entity may litigate in federal court pro se is a question of federal procedural law rather than of state law, *Elustra v. Mineo*, 595 F.3d 699, 704 (7th Cir. 2010)), a "nullity." E.g., *Applebaum v. Rush University Medical Center*, 899 N.E.2d 262, 266 (Ill. 2008); *Downtown Disposal Services, Inc. v. City of Chicago*, 943 N.E.2d 185, 194-95 (Ill. App. 2011), appeal allowed, 949 N.E.2d 1097 (Ill. 2011); *Torrey v. Leesburg Regional Medical Center*, 769 So. 2d 1040, 1044-45 (Fla. 2000); cf. *Brewer v. Poole*, 207 S.W.3d 458, 466 (Ark. 2005). If so, the absence of jurisdiction could not be cured by amending the petition, as IFC had done the day after filing it.

Bankruptcy Rule 9011(a) allows the omission of a signature, including we assume the signature of a lawyer, to be "corrected promptly." But it is unclear whether the corporation in this case was represented and its lawyer just accidentally failed to sign the pleading. For the complaint *was* signed, only by a person—IFC's president— ineligible to sign because he was not a lawyer. IFC's house counsel had, it is true, supervised the preparation of the petition and filed it with the clerk of the bankruptcy court. But we haven't been told why she didn't sign it. Without an answer to that question we can't determine whether Rule 9011(a) is applicable.

We also set to one side the doctrine of "nunc pro tunc" (now for then). It is not a substitute for relation back. It can't be used to revise history, but only to correct inaccurate records. *Central Laborers' Pension, Welfare & Annuity Funds v. Griffee*, 198 F.3d 642, 644 (7th Cir. 1999); *King v. Ionization Int'l, Inc.*, 825 F.2d 1180, 1188 (7th Cir. 1987); *United States v. Suarez-Perez*, 484 F.3d 537, 541 (8th Cir. 2007).

So we must meet Northbrook's jurisdictional argument head on.

Corporations unlike human beings are not permitted to litigate pro se. *Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993); *United States v. Hagerman*, 545 F.3d 579, 581 (7th Cir. 2008); *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1427 (7th Cir. 1985); *Nixon, Ellison & Co. v. Southwestern Ins. Co.*, 47 Ill. 444 (1868); *Berg v. Mid-America Industrial, Inc.*, 688 N.E.2d 699, 704 (Ill. App. 1997). The reasons courts give for the rule—which really are

just variations on the theme of distrust of nonlawyers' ability ever to conduct litigation in a competent and ethical fashion, see, e.g., *Strong Delivery Ministry Ass'n v. Board of Appeals of Cook County*, 543 F.2d 32, 33-34 (7th Cir. 1976); *Eagle Associates v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991); *National Independent Theatre Exhibitors, Inc. v. Buena Vista Distribution Co.*, 748 F.2d 602, 609 (11th Cir. 1984), since nonlawyers are not subject to discipline as members of the bar—apply equally to individuals. Yet individuals are permitted to litigate pro se, though not to represent other litigants, *Elustra v. Mineo*, *supra*, 595 F.3d at 704; see 28 U.S.C. § 1654, with some exceptions, such as tax advisers in Tax Court proceedings. Tax Ct. R. 200(a)(3); *Hawkins v. Commissioner,* 85 T.C.M. (CCH) 1530, 2003 WL 21436740, at *2 (U.S. Tax Ct. 2003). See also *Machadio v. Apfel*, 276 F.3d 103, 107 (2d Cir. 2002). Corporations have, it is true, on average more money for hiring lawyers than individuals do, but there are many tiny corporations and many wealthy individuals.

But there is a difference, unrelated to scale or resources, between individual self-representation and corporate representation. There is no agency problem when an individual represents himself (and remember that with just a few exceptions unless he is a lawyer he is forbidden to represent anyone other than himself), but there can be an acute agency problem when the pro se litigant is a corporation. A corporation can't literally represent itself; it has to be represented by an individual. And like any institution a corporation is itself a collective of individuals. In this case the president was representing the corporation (initially), but in other cases there might

be a question whether the designated individual's relation to the corporation made him an appropriate representative of its owners. Confining corporate representation to lawyers mitigates the problem.

That is a reason why corporations are represented by lawyers rather than a reason why a corporation, acting through its board of directors, should be forbidden to select a nonlawyer to represent it in litigation. But a court does not permit an individual to represent another person; why should it treat corporations differently in this respect? Judges for good reason don't like dealing with pro se litigants and have better grounds for their antipathy when the pro se litigant is a corporation, not only because corporate representation is third party rather than first party but also because corporations enjoy a number of privileges denied individuals, such as the cloak of limited liability worn by their investors (whether individuals or other corporations), which enables corporations to raise equity capital more cheaply than individuals can. Inability to litigate pro se can be thought of as part of the price for corporations' privileges. *United States v. Hagerman*, *supra*, 545 F.3d at 581-82; *Jadair Inc. v. United States Fire Ins. Co.*, 562 N.W.2d 401, 407 n. 14 (Wis. 1997); *Eckles v. Atlanta Technology Group, Inc.*, 485 S.E.2d 22, 26 (Ga. 1997).

But is prohibiting corporations from litigating pro se a rule of federal subject-matter jurisdiction, as Northbrook insists, so that the only thing a federal court can do with a complaint (including a petition for bankruptcy) not signed by a lawyer is dismiss it? That might seem

a question of no practical significance, since the complaint can be refiled forthwith, signed by a lawyer—as happened in this case. But the statute of limitations may have run in the interim, however brief. Moreover, preference liability in bankruptcy is limited to payments made to favored creditors within 90 days before the declaration of bankruptcy (unless the creditor is an insider, in which event the period is extended to a year, 11 U.S.C. § 547(b)(4)(B)) and so could be lost if the date of filing were delayed by even a day.

But we can't think why the rule barring corporations from litigating without counsel should be deemed a rule of subject-matter jurisdiction. In part to spare the courts the bother of addressing issues not presented by the parties, and also in recognition of the adversary character of the American adjudicative process, *Henderson v. Shinseki*, 131 S. Ct. 1197, 1202 (2011) ("branding a rule as going to a court's subject-matter jurisdiction alters the normal operation of our adversarial system. Under that system, courts are generally limited to addressing the claims and arguments advanced by the parties. Courts do not usually raise claims or arguments on their own" (citation omitted)), the Supreme Court has taken a sharp turn toward confining dismissals for want of subject-matter jurisdiction to cases in which the federal tribunal has been denied by the Constitution or Congress or a valid federal regulation the authority to adjudicate a particular type of suit. See (besides *Henderson*) *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1248 (2010); *Union Pacific R.R. v. Brotherhood of Locomotive Engineers & Trainmen General Committee*, 130 S. Ct. 584, 596-

98 (2009); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514-16 (2006); *Eberhart v. United States*, 546 U.S. 12, 18-19 (2005) (per curiam); *Scarborough v. Principi*, 541 U.S. 401, 413-14 (2004); *Kontrick v. Ryan*, 540 U.S. 443, 454-55 (2004). These days, therefore, subject-matter jurisdiction is (with an exception noted below) about the competence of the tribunal—"competence" in the sense of legal empowerment to decide a case—rather than about the mistakes that litigants and sometimes judges make in a case that is within the tribunal's competence.

An example of a case that is outside federal judicial competence is a suit that does not fit within the limits of the federal judicial power set forth in Article III of the Constitution, or a type of suit expressly barred by Congress, for example under its constitutional power to restrict the appellate jurisdiction of the Supreme Court (Article III, section 2, provides in part that "the Supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations[,] as the Congress shall make") or its implied (and exercised) power to refuse to allow federal courts to entertain diversity suits in which the stakes fall short of a dollar threshold specified by Congress. *Arbaugh v. Y & H Corp.*, *supra*, 546 U.S. at 515-16.

The primary distinction is thus between classes of case that the Constitution or legislation declares off limits to the federal courts and errors in the conduct of cases that are within limits. (The exception is for statutory limits on the time for filing an appeal. E.g., *Bowles v. Russell*, 551 U.S. 205 (2007). It has no application to this case.) IFC's

bankruptcy is the type of proceeding that Congress has authorized federal courts to handle, while the rule barring lay representation of a corporation concerns the conduct of cases that are within that authority.

The usual effects of establishing a jurisdictional prerequisite to suit are twofold. First, the prerequisite is not waivable, *Arbaugh v. Y & H Corp.*, *supra*, 546 U.S. at 514; *Hurley v. Motor Coach Industries, Inc.*, 222 F.3d 377, 379 (7th Cir. 2000), until final judgment has been entered and appellate remedies exhausted. (That is, "even subject-matter jurisdiction . . . may not be attacked collaterally," *Travelers Indemnity Co. v. Bailey*, 129 S. Ct. 2195, 2205-06 (2009), quoting *Kontrick v. Ryan*, *supra*, 540 U.S. at 445 n. 9, although there are a few exceptions. *Id*. at 2206 n. 6.) Second, dismissal for want of jurisdiction, not being an adjudication on the merits, is without prejudice, Fed. R. Civ. P. 41(b); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505-06 (2001); *Costello v. United States*, 365 U.S. 265, 285-86 (1961); *T.W. v. Brophy*, 124 F.3d 893, 898 (7th Cir. 1997), which is to say that it doesn't foreclose, by operation of the doctrine of res judicata, a future litigation to decide the merits.

These consequences of an absence of subject-matter jurisdiction are not appropriate punishments for pro se litigation by a corporation. Requiring a do-over of a lawsuit is costly to everyone yet can actually benefit the plaintiff—the usual author of the jurisdictional mistake—because dismissal without prejudice allows a complete do-over if the plaintiff can refile his case without running afoul of the jurisdictional obstacle that wrecked

his original claim. That could be a particularly costly consequence if the jurisdictional defect were discovered late in a protracted bankruptcy, as it was here; deeming a pro se filing by a corporation a defect of subject-matter jurisdiction would require IFC to file a new bank-ruptcy proceeding more than two years after the original and amended petitions.

There is no danger that litigation by unrepresented corporations will flourish unless the prohibition of lay representation of corporations is deemed jurisdictional because opponents will often prefer to litigate against a party that is not represented and so will waive any objec-tion. Judges as we said dislike pro se litigation and will be vigorous enforcers of the rule that bars it, except in cases like this where the violation was utterly incon-sequential.

We conclude that the rule is not jurisdictional—and we note that even the Illinois courts, staunch defenders of the "nullity" rule though they are, consider it discretionary rather than mandatory, see *Applebaum v. Rush University Medical Center*, *supra*, 899 N.E.2d at 266; *Downtown Disposal Services, Inc. v. City of Chicago*, *supra*, 943 N.E.2d at 194-95, while the Supreme Court of Florida has jettisoned it. *Torrey v. Leesburg Regional Medical Center*, *supra*, 769 So. 2d at 1045-46. The conclusion we reach today was implicit in *United States v. Tri-No Enterprises, Inc.*, 819 F.2d 154, 159 (7th Cir. 1987), which held that harmless violations could be ignored, and in *Scandia Down Corp. v. Euroquilt, Inc.*, *supra*, 772 F.2d at 1427, where we said that "[*i*]*f* Scandia had objected to [a nonlawyer's] representation of

Euroquilt, the district court would have been required to prevent Euroquilt from appearing at trial" (emphasis added). It's a rule and should be enforced, but sanctions for its violation should be proportioned to the gravity of the violation's consequences. E.g., *Ty Inc. v. Softbelly's Inc.*, 517 F.3d 494, 499-500 (7th Cir. 2008). There were no adverse consequences to IFC's filing error, so there was no reason to impose any sanction, let alone the sanction of dismissal.

Dismissal would have been proper, in order to implement the rule, had the court discovered at the outset that IFC was unrepresented. But having promptly obtained counsel, IFC could resurrect the litigation by amending its petition on the authority of Bankruptcy Rule 1009(a) ("a voluntary petition . . . may be amended by the debtor as a matter of course at any time before the case is closed") with relation back to the date of the original filing. That is what it did.

It's true that Rule 1009(a) doesn't mention relation back, unlike its counterpart in nonbankruptcy cases, Fed. R. Civ. P. 15(c), which allows relation back on various grounds in cases governed by the civil rules (bankruptcy proceedings have their own procedural rules). Yet relation back can be important in a bankruptcy case because without it amendments to the petition would shift the preference period.

Rule 7015 of the bankruptcy rules applies Rule 15 of the civil rules to adversary proceedings and Rule 1018 applies it to contested involuntary petitions—that is, contested declarations of bankruptcy filed by creditors

rather than by debtors. See *Bixby v. First National Bank of Elwood*, 250 F.2d 713, 719 (7th Cir. 1957); 6 Charles Alan Wright et al., *Federal Practice and Procedure*, § 1472, pp. 510-13 (3d ed. 1990). But no rule applies it to voluntary petitions. There are reasons for this difference in treatment, however. Rule 1009(a), by allowing a voluntary petition to be amended at any time, makes most of Rule 15 supererogatory. And there is no statute of limitations for filing a bankruptcy petition—a debtor is not required to file the petition when he becomes insolvent, or within any definite time afterwards. It's fine if he tries to resolve his financial problems without a bankruptcy proceeding; should his delay hurt the creditors, they can petition him into bankruptcy. So Rule 15(c) would have a diminished role in a voluntary bankruptcy, where relation back would not be needed to avert dismissal on the basis of the statute of limitations, though it could alter the preference period.

Most important, Rule 15(c) doesn't specify correction of formal defects as a ground for relation back either—yet so obviously appropriate is allowing relation back on such a ground that the courts allow it anyway. *BCS Financial Corp. v. United States*, 118 F.3d 522, 524 (7th Cir. 1997); *United States ex rel. Canion v. Randall & Blake*, 817 F.2d 1188, 1190-91 (5th Cir. 1987); 6A Charles Alan Wright et al., *supra*, § 1497, pp. 74-79. Courts can allow it in bankruptcy cases as well, without explicit textual authority, as the bankruptcy judge did in this case.

AFFIRMED.